UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIE RODRIGUEZ,

     Plaintiff,

v.                            Case No: 8:22-cv-02455-KKM-AEP

CLEAR BLUE INSURANCE COMPANY,

     Defendant.

_____

## ORDER

In 2020, Clear Blue Insurance Company insured a property owned by Marie Rodriguez. In June 2020, water caused damage to the property, and Rodriguez submitted a claim to Clear Blue, which assigned a contractor, Paul Davis Restoration & Remodeling of Tampa, to provide water mitigation services. Rather than restoring the property to its pre-loss condition, Paul Davis further damaged Rodriguez's property. As a result, Rodriguez submitted a new claim based on Paul Davis's work. Clear Blue denied coverage for the new damage.

Paul Davis then sued Rodriguez in state court for failure to pay outstanding invoices, and Rodriguez in turn sued Clear Blue, alleging three breach of contract claims. Count I of Rodriguez's complaint alleged that Clear Blue breached a contract to repair her property

after hiring Paul Davis to perform repairs. Count II alleged breach of the insurance contract based on Clear Blue's failure to pay for covered damages and additional living expenses. And Count III alleged breach of the insurance contract for Clear Blue's failure to defend and indemnify Rodriguez in Paul Davis's lawsuit against her. Clear Blue removed the lawsuit to federal court. The Parties now cross-move for summary judgment, with Clear Blue raising a new affirmative defense to Count I for the first time in its reply. After Rodriguez filed a surreply and proffered a new expert opinion to contest Clear Blue's new defense, Clear Blue moves to strike the expert opinion.

I grant partial summary judgment to Rodriguez as to Count I and summary judgment to Clear Blue as to Counts II and III. I deny as moot the motion to strike Rodriguez's expert opinion.

## I.   BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

Between November 6, 2019, and November 6, 2020, Clear Blue insured Rodriguez's property in Tampa, Florida, under a policy that provided for $195,249 in coverage. Statement of Facts (Doc. 38) ¶¶ 1–2. On June 20, 2020, water caused damage to the property and Rodriguez submitted a claim to Clear Blue. *Id.* ¶¶ 3–4. "Clear Blue [then] assigned vendor [Paul Davis] to provide water mitigation services at [Rodriguez's property]." *Id.* ¶ 5. Roughly a week after the loss, "Clear Blue advised [Rodriguez] to call

[Paul Davis], and further advised that, if [she] did not make contact with [Paul Davis] by 2:00 p.m. that day, [she] could advise Clear Blue, and, if necessary, Clear Blue could assign another vendor for water mitigation." *Id.* ¶ 6. "On July 7, 2020, [Rodriguez] executed a [w]ork [a]uthorization presented by [Paul Davis] relative to water mitigation services." *Id.* ¶ 7. Paul Davis "ultimately undertook to repair damages to [Rodriguez's property] as the result of" the loss. *Id.* ¶ 8. "[I]n the course of its repair work . . . [Paul Davis] caused some new damages." *Id.* ¶ 9. Rodriguez submitted a second claim for those new damages, which Clear Blue denied. *Id.* ¶ 10.

On August 11, 2020, Clear Blue made out a check for $82,608.48, payable jointly to Rodriguez and Paul Davis. Winn Decl. (Doc. 44-1) at 70 (reproducing the check); Rodriguez Depo. (Doc. 45-2) at 17–18. Paul Davis appears to have endorsed the check and turned it over to Rodriguez, who on September 7, 2020, made out two checks totaling $75,000 to Paul Davis. *See* Rodriguez Depo. at 28–29, 71–72. On November 10, 2020, Clear Blue made out a second check for $9,993.19 payable only to Rodriguez. Winn Decl. at 71.

These events led to a pair of state court lawsuits. In one action, Paul Davis sued Rodriguez for breach of contract and unjust enrichment based on outstanding invoices, with Rodriguez alleging a counterclaim for negligence. *See* (Docs. 44-4, 44-5, 44-6); *DBI Invs., LLC v. Rodriguez*, No. 23-ca-012740, (Fla. 13th Cir. Ct.) (Doc. 3). In the other

3

action, Rodriguez sued Clear Blue for breach of a repair contract, breach of an insurance contract for failure to pay covered losses, and breach of insurance contract for failure to defend and indemnify in Paul Davis's parallel action. *See* Notice of Removal (NOR) (Doc. 1); Compl. (Doc. 1-1) ¶¶ 13-41. In Count I, the breach of contract to repair claim, Rodriguez alleged that Clear Blue "opted to repair the interior damage to [her property] and undertook repairs inside the [property]" by "hir[ing] a preferred vendor, [Paul Davis], to perform immediate repairs" without "giv[ing] [Rodriguez] the option to hire anyone of her choice." Compl. ¶¶ 14–15. She also alleged that Clear Blue "controlled the scope of all interior work performed by Paul Davis," "issued payment directly to Paul Davis," and "utilize[ed] [Paul Davis] as its repair vendor." *Id.* ¶¶ 17–19. Clear Blue removed the case to federal court, citing diversity jurisdiction. NOR ¶¶ 1–10.

### B.  Procedural History

During discovery, Rodriguez disclosed Dennis James as her expert and submitted an expert report that offered four opinions. James's first two opinions were (1) that "[Paul Davis] failed to properly repair [Rodriguez's] property and caused more damage," and (2) "that the property owners will be displaced approximately 45 days" while repairs are conducted. James also analyzed (3) "the scope of the work to repair [Rodriguez's] property as a result of the loss, including the damage done by Paul Davis . . . and to tear out and repair/replace those portions of the building necessary to repair the damage," and (4) "the

appropriate costs for that work, and the labor costs associated with the repairs." *See* James Exp. Discl. (Doc. 51-1) at 3; *id.* at 40–55 (James's estimates regarding opinions (3) and (4)).

This disclosure became relevant when, in reply to Rodriguez's response to Clear Blue's motion for summary judgment, Clear Blue—for the first time—argued that the policy did not permit an option to repair because Rodriguez's $195,249 in coverage was at least eighty percent of her property's replacement cost just before the loss. *See* Reply to Resp. to Def. MSJ (Doc. 45).[1] Clear Blue sought to support this new argument with a supplemental declaration from its corporate representative, Terrance E. Winn, dated the day of filing, which stated that "[Clear Blue] believes that [the property] was insured to at least 80% of the full replacement cost of the building immediately before the loss." Winn Suppl. Decl. (Doc. 45-1) at 3.[2] Rodriguez filed a surreply arguing that Clear Blue had an option to repair under the policy because Rodriguez's coverage was less than eighty percent of the property's replacement cost just before the loss. *See* Surreply (Doc. 50). To counter

---

[1] Clear Blue's motion for summary judgment argued only that it was not vicariously liable for Paul Davis's acts. *See* Def. MSJ at 14–23. Rodriguez responded that Count I was not a vicarious liability claim at all, but an "option to repair" claim under Florida insurance law. *See* Resp. to Def. MSJ (Doc. 43) at 7–17.

[2] The Court struck the Parties' initial summary judgment filings for failure to comply with the Case Management Scheduling Order's requirement that the Parties produce and reference a single joint statement of undisputed facts. *See* (Doc. 37). Winn signed his supplemental declaration the same day Clear Blue's reply was originally filed. *See* (Docs. 19, 19-1).

Winn's supplemental declaration, Rodriguez offered a supplemental affidavit from James stating that, in his opinion, the replacement cost of the entire home was $327,250. James Suppl. Aff. (Doc. 50-1) at 2. Like Winn's declaration, James's supplemental affidavit was signed on the day of filing. *See id.*; (Doc. 22); *see also supra* n.2.

Clear Blue moved to strike James's supplemental affidavit under Federal Rule of Civil Procedure 37, arguing that the new opinion was outside the scope of James's expert disclosure and was untimely. *See* MTS (Doc. 51). Rodriguez conceded that James's new opinion did not comply with Rule 26 but argued that the noncompliance was "substantially justified" under Rule 37(c)(1) given Clear Blue's failure to raise this affirmative defense at an earlier time in the litigation. Resp. to MTS (Doc. 52).

## II.   LEGAL STANDARDS

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present

evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020); *Reese v. Hebert*, 527 F.3d 1253, 1268 (11th Cir. 2008).

## III.  ANALYSIS

Because Rodriguez's motion for partial summary judgment as to Count I involves the same issues as Clear Blue's motion for final summary judgment and the related motion to strike, I address these motions together in a single subsection regarding Count I. Next, I turn to Count II, and finally to Count III.

### A. Count I: Breach of Contract to Repair

Rodriguez's theory of Count I is that Clear Blue exercised an option to repair under the insurance policy, thus creating a derivative contract to repair under Florida law. Because Rodriguez has shown a genuine dispute of material fact about whether Clear Blue exercised that right to repair, I deny Clear Blue's motion for summary judgment as to Count I. For similar reasons, Rodriguez's motion for partial summary judgment on Count I should be

denied, except as to whether Paul Davis failed to restore the property to its pre-loss condition, which is undisputed.

### 1. Florida Insurance Law and *Drew* Agreements

The Parties agree that Florida insurance law governs this diversity action. *See* Def. MSJ (Doc. 44) at 12–13; Resp. to Def. MSJ at 7. One species of Florida insurance suit is for breach of an insurer's contract to repair. *See Drew v. Mobile USA Ins. Co.*, 920 So. 2d 832, 835 (Fla. 4th DCA 2006). Colloquially known as "*Drew* agreement[s]," *see, e.g.*, *People's Tr. Ins. Co. v. Espana*, 320 So. 3d 940, 943 (Fla. 3d DCA 2021), these contracts are based on the idea that "when the insurer makes its election to repair, that election is binding upon the insured and creates a new contract under which the insurer is bound to perform repairs within a reasonable time," *Vainberg v. Avatar Prop. & Cas. Ins. Co.*, 321 So. 3d 231, 235 (Fla. 4th DCA 2021) (cleaned up). Once the option is invoked, "the insured and the insurer . . . become parties to a separate repair contract wherein the insurer is obligated to perform repairs which will adequately return the insured property to its pre-loss condition." *Id.* Thus, "when an option to repair has been invoked but the repairs were not adequately performed, an insured may be entitled to damages caused by the insufficient repairs outside of the scope of the subject policy of insurance." *Id.* The exemplary scenario is when "the insurer elect[s] the option to repair, select[s] the repair company, and direct[s]

the insureds to use the services of the repair company the insurer selected." *Drew*, 920 So. 2d at 836.

The creation of a *Drew* agreement stems from an insurer's election of an option to repair under the controlling policy. *See id.* at 835–36 ("[I]f under the insurance contract provision Mobile USA decided to exercise its option to repair, Mobile USA would have created a new contract."); *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1366 (M.D. Fla. 2007) ("Under Florida law, when an insurance contract provides an option . . . for the insurer to either pay for the loss or repair or replace the property, an insurer's decision to repair the property creates a new contract to restore the property within a reasonable time. . . . However, the insurer must elect to exercise a contractual option to repair." (citations omitted)). In other words, for there to be a *Drew* agreement and a resulting breach of contract claim, the insurance company must have had the contractual option to repair in the first place. The best analogy is to a condition precedent. *Cf. Espana*, 320 So. 3d at 944 (explaining that certain duties of an insurer under the policy's option to repair provision were not "conditions precedent to the formation of [a] *Drew* agreement").

As Clear Blue concedes, whether there was a contractual option to repair under Rodriguez's policy depends on if the property was insured for "80% or more of the full replacement cost of the building immediately before the loss." *See* Reply to Resp. to Def.

9

MSJ at 1–4 (discussing the policy's provisions with respect to Clear Blue's potential option to repair); Resp. to Pl. MSJ (Doc. 47) at 6 n.1, 16; *see also* Winn Decl. at 27 (loss settlement provision), 29 (default option to repair provision), 64 (Florida-specific revision). Rather than dispute that the policy provides an option to repair in the abstract, Clear Blue argues that the option was inapplicable to Rodriguez's policy because her coverage exceeded eighty percent of the property's replacement cost just before the loss. *See* Reply to Resp. to Def. MSJ at 1–4. In other words, if Rodriguez's property was underinsured at the time of the loss, Clear Blue had the contractual option to repair. And if so, there is a genuine dispute of material fact whether Clear Blue exercised that option.

### 2. Clear Blue Has Waived Any Affirmative Defense That the Policy Did Not Provide an Option to Repair

From the initial complaint, Rodriguez's theory of Count I has been that Clear Blue created and then breached a *Drew* agreement. Rodriguez alleged that Clear Blue "opted to repair the interior damage to [her property] and undertook repairs inside the [property]" by "hir[ing] a preferred vendor." Compl. ¶¶ 14–15. She also claimed that Clear Blue denied her "the option to hire anyone of her choice," *id.* ¶ 14, had "a special, contractual relationship with Paul Davis," *id.* ¶ 16, "controlled the scope of all interior work performed by Paul Davis," *id.* ¶ 17, "issued payment directly to Paul Davis," *id.* ¶ 18, and "utilize[ed] [Paul Davis] as its repair vendor," *id.* ¶ 19. The allegations in Count I clearly describe a

*Drew* agreement under Florida law. *Cf.* 31A Fla. Juris. 2d Ins. § 3349 (Mar. 2024 update) (discussing *Drew* agreements in the insurance section of a notable Florida treatise).

Despite that alleged theory of liability, Clear Blue never defended against Count I on the ground that there could not have been a *Drew* agreement because the policy did not provide for an option to repair or that the factual condition precedent to exercising an option to repair (that the property was insured for 80% or more of its full replacement cost immediately before the loss) did not exist. *See* Answer (Doc. 4) ¶¶ 42–58 (defenses and affirmative defenses); *see also* FED. R. CIV. P. 9(c) (requiring parties to deny the occurrence or performance of a condition precedent with particularity); *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010) ("Failure to plead an affirmative defense generally results in a waiver of that defense."). Clear Blue did not even argue this theory in its motion for summary judgment. *See* Def. MSJ. Instead, Clear Blue contended that it was not vicariously liable for Paul Davis's acts. *See id.* at 14 ("Clear Blue is not liable for damages to [Rodriguez's] property allegedly caused by [Paul Davis], as [Paul Davis] was not acting as an employee or agent of Clear Blue, and [Rodriguez] lacks any evidence otherwise."). Clear Blue never discussed *Drew* or any Florida decision applying it, instead relying on general principles of agency law and out-of-state precedents. *See id.* at 14–23. Only after Rodriguez responded to Clear Blue's summary judgment motion on the grounds that Count I was based on a *Drew* agreement, *see* Resp. to Def. MSJ at 1–3, 7–17, did Clear

Blue argue that this was impossible because the contract did not provide for an option to repair under these facts, *see generally* Reply to Resp. to Def. MSJ.

To excuse the belated defense, Clear Blue blames Rodriguez for hiding the nature of her claim. *See* MTS at 8–9 ("[Rodriguez] has been vague regarding her theory of liability, and Clear Blue believed her theory of liability was grounded in principles of vicarious liability because Clear Blue could not conceive of any other potential theory of liability."); Resp. to Pl. MSJ at 6 n.1 (suggesting that Clear Blue will seek to amend its responsive pleading to include this argument as a defense). But as explained above, the nature of the allegations sounding in violation of a repair contract appears on the face of Count I, particularly when considered in the light of *Drew* agreements' nearly twenty-year pedigree in Florida insurance law. Thus, Clear Blue has waived any affirmative defense that the insurance policy did not permit it to exercise an option to repair.

Although I need not decide whether to permit a Rule 15(a)(2) amendment because Clear Blue has never sought one in a separate motion, *see* FED. R. CIV. P. 7(b), I note that significant prejudice to Rodriguez would almost certainly result. Discovery has long ago closed, the parties have briefed (twice now, in fact) the summary judgment motions, and the case is poised to proceed to trial. Reopening the pleading stage to permit a new affirmative defense would require more expert discovery on the value of the property, another round of dispositive and *Daubert* motions, and further delay trial. Justice does not

so require when Clear Blue had notice from the initiation of the lawsuit. *See* FED. R. CIV. P. 15(a)(2).

### 3. There is a Genuine Dispute of Material Fact on Whether Clear Blue Exercised an Option to Repair by Selecting Paul Davis

Because the record reflects a genuine dispute of material fact on whether Clear Blue exercised the option to repair, summary judgment is inappropriate on Count I. Several pieces of evidence show that a genuine dispute of fact persists on this point.

First, the Parties' undisputed statement of facts suggests a jury question. The Parties agree that, following the loss, Clear Blue "*assigned* vendor Paul Davis . . . to provide water mitigation services" at Rodriguez's property. Statement of Facts ¶ 5 (emphasis added). They also agree that "[o]n or around June 26, 2020, Clear Blue advised [Rodriguez] to call [Paul Davis], and further advised that, if [she] did not make contact with [Paul Davis] by 2:00 p.m. that day, [Rodriguez] could advise Clear Blue, and, if necessary, Clear Blue could assign another vendor for water mitigation." *Id.* ¶ 6. But about two weeks after the call, Rodriguez "executed a [w]ork [a]uthorization presented by [Paul Davis] relative to water mitigation services." *Id.* ¶ 7.

Next, Paul Davis's July 7, 2020 work authorization contains provisions that cut for and against the exercise of Clear Blue's option to repair. On the one hand, the work authorization states that Rodriguez "understand[s] that [Paul Davis] has no connection with [her] insurance company or its adjuster and that [she] alone ha[s] the right and

authority to select and authorize [Paul Davis] to make repairs." *See* July 7 Work Auth. (Doc. 44-2) at 1. On the other hand, the work authorization appears to have provided Clear Blue a role in determining the scope of Paul Davis's work. *Id.* (contemplating that "the total cost of work will be in accordance with the original estimate and any supplemental estimates prepared by [Paul Davis] and authorized and approved by the owner *and adjuster for [Rodriguez's] insurance company*, plus any change orders approved by [Rodriguez and Paul Davis]" (emphases added)). The mixed signals continue. The work authorization expressly refers to the work being authorized as "repairs to [Rodriguez's] property." *Id.* But it is undisputed that this work authorization, at least, was "relative to water mitigation services," Statement of Facts ¶ 7, the same services that Clear Blue "assigned vendor [Paul Davis] to provide . . . at [Rodriguez's property]" following the loss, *id.* ¶ 5.

There is a second work authorization in the record, dated August 8, 2020. *See* Aug. 8 Work Auth. (Doc. 44-3) at 1. But Rodriguez does not recall signing it and claims that the signature on the document does not look like hers. Rodriguez Aff. (Doc. 43-4) at 2. The second work authorization also reflects different dates on each page—the first page showing August 8, 2020, and the second July 7, 2020. *Compare* Aug. 8 Work Auth. at 1, *with id.* at 2. Based on these deficiencies, Rodriguez "questions" the second work authorization's authenticity. *See* Resp. to Def. MSJ at 15–16. And the checks written by

Clear Blue further create a jury question, as the first check was payable to both Rodriguez and Paul Davis (later endorsed over to Rodriguez so she could pay Paul Davis herself) and the second check payable only to Rodriguez. *See, e.g.*, Winn Decl. at 70–71; Rodriguez Depo. at 28–29; 71–72.

Finally, Rodriguez stated in her deposition that Clear Blue "sent" Paul Davis to her property and that Paul Davis "wrote [Clear Blue's adjuster] up an estimate and sent it to [the adjuster for approval]." Rodriguez Depo. at 17; *see also id.* at 28 (explaining that Clear Blue's adjuster "sent [Paul Davis] out"), 30 (Clear Blue "made it clear that Paul Davis was who they worked with and that's who was coming."). And although Clear Blue never explicitly told Rodriguez that coverage depended on using Paul Davis, Rodriguez stated that because Clear Blue sent Paul Davis and told her that Paul Davis "was the company [Clear Blue] worked with, and they were the best people to do the job," "[Rodriguez and her husband] didn't know [they] were able to call anybody else, so [they] listened to [Clear Blue]." *Id.* at 31.

When the evidence is viewed in the light most favorable to the nonmovant, the record reveals a quintessential jury question as to whether Clear Blue exercised its option to repair by assigning Paul Davis as a preselected vendor and then controlling the scope of work. *See Drew*, 920 So. 2d at 836 (The insured has a potential claim for breach of contract to repair when "the insurer elect[s] the option to repair, select[s] the repair company, and

direct[s] the insureds to use the services of the repair company the insurer selected."); 31B Fla. Juris. 2d Ins. § 3616 (Mar. 2024 update) ("[W]hether an insurer breached an alleged new contract with homeowners to repair a water leak and mold damage was an issue of fact for the jury in the insureds' suit." (citing *Drew*, 920 So. 2d at 832)).

Viewing the record in the light most favorable to Rodriguez, and considering the Parties' stipulations (1) that Paul Davis arrived at Rodriguez's property only after "Clear Blue assigned vendor [Paul Davis] to provide water mitigation services," Statement of Facts ¶ 5, and (2) that Clear Blue later "advised" Rodriguez that Clear Blue could "assign another vendor" to perform those services if Paul Davis was unresponsive, *id.* ¶ 6, there is a genuine dispute of material fact as to whether Clear Blue exercised its option to repair.

### 4. Rodriguez Is Entitled to Partial Summary Judgment on Count I Because It Is Undisputed That Paul Davis Did Not Restore the Property to Its Pre-Loss Condition

Rodriguez moves for partial summary judgment on Count I, arguing that the record shows undisputedly that (1) Clear Blue selected Paul Davis and controlled the scope of its work and (2) Paul Davis did not restore Rodriguez's property to its pre-loss condition. *See generally* Pl. MSJ (Doc. 46).

On the first point, I deny the motion for substantially the same reasons as I denied Clear Blue's motion for summary judgment on Count I. While it is undisputed that Clear Blue assigned Paul Davis to perform water mitigation services, viewing the record in the

16

light most favorable to the nonmovant, there is a factual dispute on whether Clear Blue selected Paul Davis for the broader repair project, controlled the scope of its work, and forced that selection and control on Rodriguez. Those factual questions are for the jury.

On the second point, though, Rodriguez is entitled to partial summary judgment. Everyone agrees (and the record reflects) that Paul Davis caused additional damage to Rodriguez's property during the repairs and did not leave the property in its pre-loss condition. *See* Statement of Facts ¶ 9; Resp. to Pl. MSJ at 3; Def. MSJ at 2–3; Reply to Resp. to Def. MSJ at 7–8 (discussing damage to floors and appliances caused by Paul Davis). Clear Blue does not seriously contest this sub-issue in its response to Rodriguez's motion for partial summary judgment, instead falling back on arguments that there was no option to repair in the first place or that, if there was, Clear Blue did not exercise it. *See generally* Resp. to Pl. MSJ. The bottom line remains though that, if Clear Blue exercised its option to repair, then Paul Davis did not "restore [Rodriguez's property] to substantially the condition existing before the damage occurred." *Drew*, 920 So. 2d at 836. Limited to this sub-issue, Rodriguez is entitled to summary judgment on Count I.

### B. Clear Blue Is Entitled to Summary Judgment on Count II Because Any Damage Caused by Paul Davis Was Excluded From the Policy

Clear Blue also moves for summary judgment on Count II, which alleges that Clear Blue breached its insurance contract with Rodriguez "by failing to pay all covered damage

to [her property] pursuant to the terms of the policy and for failing to pay for the additional living expenses that [Rodriguez] has incurred and will incur." Compl. ¶ 27.

Clear Blue argues that Rodriguez has presented no evidence that it failed to pay covered damages. Def. MSJ at 14. Rodriguez responds that, although improperly performed work by Paul Davis might not be covered under the policy's faulty workmanship exclusion, some damages survive under the exclusion's "ensuing loss" exception. Resp. to Def. MSJ at 17–20. Clear Blue replies that such damages are not ensuing losses and that they would not be covered either way. Reply to Resp. to Def. MSJ at 6–8. On review of the policy language and general principles of Florida insurance law, I agree with Clear Blue that damages caused by Paul Davis during repairs were not covered ensuing losses.

Rodriguez's policy included a standard faulty workmanship exclusion. *See* Winn Decl. at 26. The exclusion begins by stating that "[w]e do not insure for loss to property . . . caused by any of the following. However, any ensuing loss . . . not precluded by any other provision in this policy is covered." *Id.* at 26. "[A]ny of the following" includes "[f]aulty, inadequate or defective . . . [(1)] Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; [(2)] Materials used in repair, construction, renovation or remodeling; or [(3)] Maintenance; of part or all of any property whether on or off the 'residence premises.' " *Id.* at 26. In laymen's terms, the policy does not cover losses to property caused by poor workmanship, including during repairs, but

does cover "ensuing losses" that indirectly flow from poor workmanship so long as they are not otherwise excluded.

In Florida, "[a]n ensuing loss is a loss that occurs separate from but as a result of an excluded loss. Ensuing-loss exceptions are not applicable, however, if the ensuing loss was directly related to the original excluded risk." *Liberty Mut. Fire Ins. Co. v. Martinez*, 157 So. 3d 486, 488 (Fla. 5th DCA 2015) (citing *Swire Pac. Hldgs., Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 167–68 (Fla. 2003)). Here, the excluded risk is that those responsible for conducting repairs will make things worse by performing faulty work. Because that is exactly what Rodriguez alleges happened, any resulting losses would be excluded under the faulty workmanship provision.

Rodriguez concedes that "the improperly performed work by Paul Davis could be excluded from coverage by the faulty workmanship exclusion," Resp. to Def. MSJ at 18, but argues that Paul Davis "dented originally undamaged appliances" and "scratched [Rodriguez's] newly installed floors while performing other work at [the] property" and that these damages are covered ensuing losses because they are unrelated to water damage, *id.* at 19. That argument misses the mark. The only reason Paul Davis performed any work on Rodriguez's property was to mitigate and then repair water damage. Any additional damage that occurred during these allegedly faulty repairs is plainly excluded because it was "caused by" Paul Davis's faulty workmanship. *See* Winn Decl. at 26 (reproducing the faulty

19

workmanship exclusion). To classify such directly related losses as "ensuing" from excluded faulty workmanship rather than being "caused by" it "would be to allow the ensuing loss provision to completely eviscerate and consume the [faulty workmanship] exclusion." *Swire*, 845 So. 2d at 168. Clear Blue is entitled to summary judgment on Count II.

### C. The Parties Agree That Clear Blue Is Entitled to Summary Judgment as to Count III

Clear Blue argues, and Rodriguez concedes, that Clear Blue is entitled to summary judgment on Count III. *See* Def. MSJ at 11, 14; Resp. to Def. MSJ at 4 ("[Rodriguez] agrees that summary judgment is appropriate with regard to Count III . . . as there are no facts that would support liability coverage under the liability portion of the insurance policy.").[3]

## IV.  CONCLUSION

Accordingly, the following is **ORDERED:**

1.    Clear Blue Insurance Company's motion for summary judgment (Doc. 44) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Motion is **GRANTED** as to Count II and Count III, but **DENIED** as to Count I.

---

[3] Rodriguez suggests in her response to Clear Blue's motion for summary judgment "that cost[s] related to the lawsuit by Defendant's vendor should be covered damages under Count I." *See* Resp. to Def. MSJ at 4. I need not address this issue because Rodriguez has not moved for partial summary judgment as to damages. *See* Pl. MSJ at 2 ("The only remaining issue for trial should be damages.").

2.      Because Clear Blue has waived any affirmative defense based on its inability to exercise an option to repair under the insurance policy, Clear Blue's Motion to Strike the Supplemental Affidavit of Rodriguez's Expert (Doc. 51) is **DENIED as moot**.

3.      Rodriguez's Motion for Partial Summary Judgment on Count I (Doc. 46) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Motion is granted with respect to Count I only so far as it is undisputed that Paul Davis failed to restore Rodriguez's property to its pre-loss condition.

4.      In the light of the Court's partial resolution of the issues in this case in ruling on the Cross-Motions for Summary Judgment, the Parties are ordered to attend a second mediation conference no later than **July 5, 2024**. The Parties shall file a notice scheduling mediation no later than **June 3, 2024.**

5.      The Parties must submit a joint notice of a proposed trial term along with an estimated length of trial no later than **June 7, 2024.**

**ORDERED** in Tampa, Florida, on May 20, 2024.

Kathryn Kimball Mizelle
United States District Judge