UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIE RODRIGUEZ,

    Plaintiff,

v.                                                                  Case No: 8:22-cv-02455-KKM-AEP

CLEAR BLUE INSURANCE COMPANY,

    Defendant.
_____

## ORDER

Defendant Clear Blue Insurance Company moves for relief from the order resolving the parties' cross-motions for summary judgment. Mot. for Recons. (Doc. 70). Plaintiff Marie Rodriguez opposes the motion. (Doc. 74). Because Clear Blue's requests for relief lack merit, I deny the motion.

### I. BACKGROUND

As discussed in the order resolving the parties' cross-motions for summary judgment, the procedural posture of this case is complex. MSJ Order (Doc. 65) at 2–6. In short, a property owned by Rodriguez and insured by Clear Blue sustained water damage. A contractor, Paul Davis Restoration, performed mitigation and repair work on the property. But Paul Davis only made things worse. Rodriguez sued Clear Blue in state court

alleging, among other things, the breach of a contract to repair based on Paul Davis's faulty work (Count I). Clear Blue removed the case to federal court and later moved for summary judgment. Rodriguez cross-moved for partial summary judgment as to all issues in Count I except for damages.

At the reply stage of summary judgment briefing, Clear Blue asserted—for the first time in the litigation—that Count I failed because Rodriguez's insurance policy did not allow Clear Blue the option to repair the property using a chosen contractor. This argument arises from the text of the policy, which the parties agree includes an option to repair if the property was underinsured at the time of the loss. In support of the new argument, Clear Blue submitted a supplemental declaration from Terrance E. Winn, Clear Blue's corporate representative. Winn stated that Clear Blue believed that Rodriguez's property was not underinsured. Thus, Clear Blue argued that it could not have exercised an option to repair under the policy. Rodriguez filed a surreply contesting this argument and including additional evidence about the value of the property from her expert witness, which Clear Blue then moved to strike as untimely.

In the order resolving the cross-motions, I concluded that Clear Blue had waived any affirmative defense based on its contention that the policy did not include an option to repair on account of the underinsurance clause. *Id.* at 10–13, 21. Given that ruling, I identified a genuine dispute of material fact over whether Clear Blue opted to repair using

1

Paul Davis. *Id.* at 13–16. Thus, I denied Clear Blue's motion for summary judgment as to Count I and granted Rodriguez partial summary judgment only as to whether Paul Davis had restored Rodriguez's property to its pre-loss condition (it had not). *Id.* at 20–21.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) permits a district court to "relieve a party or its legal representative from a final judgment, order, or proceeding" for a list of enumerated reasons "[o]n motion and just terms." Similarly, Federal Rule of Civil Procedure 59(e) allows a district court to "alter or amend a judgment." "The word 'judgment' as used in Rule 59(e) includes 'any order from which an appeal lies.'" *Emergency Recovery, Inc. v. Hufnagle*, 77 F.4th 1317, 1326 (11th Cir. 2023) (quoting FED. R. CIV. P. 54(a)).

Unlike Rules 59(e) and 60(b), Federal Rule of Civil Procedure Rule 54(b) states that (absent exceptions not at issue) "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." More generally, a district court may always modify an order granting partial summary judgment under Rule 56(g) "at any time prior to the entry of a final judgment." 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2737 (4th ed. June 2024 update). But if "the court changes the initial ruling and broadens the scope of trial, it must inform the parties and give them an opportunity to

2

present evidence relating to the newly revived issue to avoid potential prejudice." *Id.* § 2737 n.25.

However framed, "[a] motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (quotations omitted); *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005).[1] "This prohibition includes new arguments that were previously available, but not pressed." *Wilchombe*, 555 F.3d at 957 (quotations omitted). The decision whether to grant a motion for reconsideration is committed to the district court's "sound discretion." *Id.*

## III. ANALYSIS

Clear Blue styles its motion as "made pursuant to [Rule 60], pursuant to [Rule 59], and pursuant to [my] inherent and discretionary authority." Mot. for Recons. at 1. As a preliminary matter, neither Rule 59 nor Rule 60 are applicable to non-final judgments. Because the order concerning the cross-motions for summary judgment left several issues in Count I undecided, it was not final as to the case or even as to Count I. *E.g.*, *id.* at 17.

---

[1] *See also Maldonado v. Snead*, 168 F. App'x 373, 387 (11th Cir. 2006) (per curiam) (" 'We see no reason to apply a different standard when the party seeks reconsideration of a non-final order' than when the party seeks reconsideration of a final judgment." (quoting *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993))), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

3

Thus, to the extent that Clear Blue seeks relief from a non-final order under Rule 59 or Rule 60, the motion is denied without prejudice as unripe. *See Denson v. United States*, 574 F.3d 1318, 1335 n.52 (11th Cir. 2009) (explaining that district courts should deny a Rule 60(b) motion attacking a non-final order "for the obvious reason that the . . . order [is] not final"); *Emergency Recovery*, 77 F.4th at 1326.

Setting that procedural deficiency aside, I also deny the motion on the merits.

First, Clear Blue contends that Rodriguez "did not, in fact, plead the existence of a *Drew* agreement [(a reference to *Drew v. Mobile USA Ins. Co.*, 920 So. 2d 832 (Fla. 4th DCA 2006))], or Breach of a Repair Contract [in Count I]." Mot. for Recons. at 2, 5. But Clear Blue has never raised a pleading argument, either at the motion to dismiss or summary judgment stage. *See generally* (Doc. 44).

To the degree that Clear Blue's argument rests on the summary judgment order's conclusion that justice does not require granting Clear Blue leave to amend to add an affirmative defense, Rodriguez's failure to cite *Drew* by name in Count I is no reason to reconsider that ruling. Count I describes a claim for breach of an insurer's derivative contract to repair under Florida law. Rodriguez alleged that Clear Blue "opted to repair the interior damage to the [property] and undertook repairs inside the [property]," Compl. (Doc. 1-1) ¶ 15, by "hir[ing] a preferred vendor," *id.* ¶ 14. Count I's allegations are

4

consistent with the label that Rodriguez attached: "Breach of Repair Contract." *See id.* at 2. Given this language, Clear Blue had fair notice of the nature of Rodriguez's claim.

Second, Clear Blue suggests that the order wrongly faulted it for not recognizing that Count I implicates what Florida law refers to as a *Drew* agreement. Mot. for Recons. at 3–4. But there is nothing extraordinarily exotic about this kind of claim for breach of a repair contract. Florida courts handling insurance cases have regularly relied on *Drew* and its progeny for the same proposition Rodriguez does: that an insurer's election of an option to repair creates a new contract binding on both insurer and insured. *See People's Tr. Ins. Co. v. Franco*, 305 So. 3d 579, 582 (Fla. 3d DCA 2020) ("The election-to-repair endorsement has been an established option for various Florida residential insurance policy forms for several years. The legal features of the endorsement have been analyzed repeatedly by Florida's appellate courts. The new contract formed between the insurer's preferred and designated contractor under such an endorsement and the insured has been termed a "Drew agreement," a reference to *Drew v. Mobile USA Ins. Co.*, 920 So. 2d 832 (Fla. 4th DCA 2006)."); *People's Tr. Ins. Co. v. Lavadie*, 306 So. 3d 285, 290 (Fla. 3d DCA 2020) ("Right-to-repair clauses in residential insurance policies are not a recent creation."). That derivative contracts to repair appear to originate in auto insurance case law, *see Drew*, 920 So. 2d at 834–36 (applying two fifty-year-old auto insurance decisions from the 4th DCA and a twenty-two-year-old auto insurance decision from the Florida

5

Supreme Court to the property insurance context), does not negate Florida courts' regular application of the same principles to property insurance contracts.[2]

Clear Blue stresses the word "unequivocal" in a treatise's recitation of Florida law to emphasize its narrow understanding of *Drew*. *See* Mot. for Recons. at 4–5 (citing 31A FLA. JURIS. 2D INS. § 3349 (Mar. 2024 update)). But Clear Blue never argued in its summary judgment briefing that Rodriguez's claim fails because Clear Blue did not "unequivocally" exercise its option to repair, even after Rodriguez's response made her theory of the case clear. A motion for reconsideration may not raise unpreserved arguments. *Wilchombe*, 555 F.3d at 957.

Fourth, Clear Blue reprises its contention from its reply in the summary judgment briefing that Rodriguez somehow unfairly concealed her theory of liability. Mot. for Recons. at 6. Like Clear Blue's first argument for reconsideration, I have already rejected this argument and do so again. The plain text of the complaint supports a claim for breach

---

[2] *See People's Tr. Ins. Co. v. First Call 24/7, Inc.*, 333 So. 3d 1144, 1145–46 (Fla. 4th DCA 2022) (recognizing the existence of *Drew* agreements under Florida insurance law in the context of a property insurance contract); *People's Tr. Ins. Co. v. Chen*, 333 So. 3d 208, 214 (Fla. 4th DCA 2022) (same); *People's Tr. Ins. Co. v. Nowroozpour*, 331 So. 3d 193, 196 (Fla. 4th DCA 2021) (same); *Vainberg v. Avatar Prop. & Cas. Ins. Co.*, 321 So. 3d 231, 235 (Fla. 4th DCA 2021) (same); *People's Tr. Ins. Co. v. Tosar*, 332 So. 3d 552, 559 (Fla. 3d DCA 2021) (same); *People's Tr. Ins. Co. v. Espana*, 320 So. 3d 940, 943–44 (Fla. 3d DCA 2021) (same); *Iwanicki v. SafePoint Ins. Co.*, 326 So. 3d 157, 159–60 (Fla. 3d DCA 2021) (same); *People's Tr. Ins. Co. v. Santos*, 320 So. 3d 910, 916 n.8 (Fla. 3d DCA 2021) (same); *People's Tr. Ins. Co. v. Amaro*, 319 So. 3d 747, 752–53 (Fla. 3d DCA 2021) (same); *People's Tr. Ins. Co. v. Alonzo-Pombo*, 307 So. 3d 840, 843 & n.2 (Fla. 3d DCA 2020) (same); *Robinson v. Fla. Peninsula Ins. Co.*, 178 So. 3d 947, 949 (Fla. 4th DCA 2015) (same); *Calloway v. Safeco Ins. Co. of Am.*, No. 4-cv-104, 2010 WL 55610, at *3–4 (M.D. Fla. Jan. 5, 2010) (same); *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1366 (M.D. Fla. 2007) (same).

of a derivative repair contract and nothing about the depositions that Clear Blue cites suggests that Rodriguez unfairly disguised her claim. For example, Rodriguez's counsel asked Winn whether Clear Blue "gave Ms. Rodriguez any options to hire someone of her choosing when they spoke with her on June 24th of 2020?" Winn Dep. (Doc. 43-1) at 24:10–13. When Winn declined to answer clearly, counsel asked several follow-up questions covering similar ground. *Id.* at 25:25–26:20. In the context of Rodriguez's complaint and Florida insurance law, this kind of questioning indicates an attempt to establish that Clear Blue exercised an option to repair under *Drew*.

Finally, Clear Blue objects to the characterization of the underinsurance clause as a condition precedent to the formation of a *Drew* agreement and an affirmative defense to Count I. Mot. for Recons. at 6–12. This collection of arguments misses the mark in several respects.

To start, Clear Blue conceded that the existence (or lack thereof) of a contractual option to repair based on the underinsurance clause was an affirmative defense in its summary judgment briefing. *See* (Doc. 47) at 6 n.1 (arguing that Rodriguez's expert opinion on the value of her property (and thus whether it was underinsured) "implicate[d] a new Affirmative Defense of Clear Blue in this case arising from the Loss Settlement provisions of the subject Policy"). Clear Blue's concession means that disagreement with the condition precedent analogy is beside the point because Clear Blue waived any

7

affirmative defense based on the underinsurance clause, condition precedent-like or otherwise, by failing to include such a defense in its responsive pleading. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010) ("Failure to plead an affirmative defense generally results in a waiver of that defense.").

That the lack of an option to repair would be an affirmative defense under Florida law also makes sense given the derivative nature of *Drew* agreements. Litigants prove a *Drew* agreement was formed by introducing evidence that "the insurer elected the option to repair, selected the repair company, and directed the insureds to use the services of the repair company the insurer selected." *Drew*, 920 So. 2d at 836. This inquiry focuses on the insurer's conduct. *See, e.g.*, *Iwanicki*, 326 So. 3d at 160 ("Based on these facts—establishing that [the insurer] unilaterally chose and dispatched a restoration company which then dealt solely with [the insurer] regarding estimates, invoices, and payment—a jury reasonably could have found that [the insurer] had exercised its option to repair."). Count I of Rodriguez's complaint takes a similar tack, alleging that Clear Blue "hired a preferred vendor . . . to perform immediate repairs . . . and did not give [Rodriguez] the option to hire anyone of her choice." Compl. ¶ 14; *see also id.* ¶¶ 9, 13–24. An argument that there was no option to repair under the contract and thus no ability for the insurer to form a *Drew* agreement regardless of Clear Blue's conduct would

8

negate liability even if everything Rodriguez alleged in the complaint were true. That is a classic description of an affirmative defense.

Clear Blue argues that the condition precedent analogy conflicts with *Iwanicki*, which held that an insurer may form a *Drew* agreement "notwithstanding [the insurer's] failure to give written notice" of its election to repair under the controlling policy. 326 So. 3d at 160; Mot. for Recons. at 8. But *Iwanicki* concerned an insurer's contractual duty to give written notice of its election to repair, not an underinsurance clause determining whether such an option existed in the first place. And to be clear, if Clear Blue were right and *Iwanicki* stood for the proposition that an insurer's conduct could create a *Drew* agreement despite the failure to satisfy a condition like the underinsurance clause, that would mean only that whether Rodriguez's property was underinsured is irrelevant to Count I. Indeed, Rodriguez argued for precisely this interpretation of *Iwanicki* in her summary judgment briefing. *See* (Doc. 46) at 13–14; (Doc. 49) at 1–3. Either way, Clear Blue was not entitled to summary judgment on Count I.

## IV.   CONCLUSION

In sum, Clear Blue's argument that Rodriguez's *Drew* claim fails because the insurance policy did not include an option to repair was, at best, an affirmative defense. Clear Blue not only failed to raise this defense in a responsive pleading, Clear Blue failed to even mention the argument until it filed a reply brief at the summary judgment stage.

9

Under these circumstances, Clear Blue has waived any defense that the text of the insurance policy defeats Rodriguez's *Drew* claim despite Clear Blue's alleged conduct. Accordingly Clear Blue's motion for reconsideration (Doc. 70) is **DENIED**.

 **ORDERED** in Tampa, Florida, on July 24, 2024.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge