UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIE RODRIGUEZ,

    Plaintiff,

v.                                                 Case No: 8:22-cv-02455-KKM-AEP

CLEAR BLUE INSURANCE COMPANY,

    Defendant.
_____

## ORDER

In three filings, the parties move to exclude at trial various pieces of evidence. (Docs. 76–78). After conferring, they agree that one of those motions and part of another is now moot. (Doc. 82). That leaves two motions *in limine*. Marie Rodriguez moves to exclude a letter from her counsel to Paul Davis Restoration. Rodriguez MIL (Doc. 76). Clear Blue moves to exclude (1) a supplemental affidavit from Rodriguez's damages expert and (2) any evidence of the controlling insurance policy. Clear Blue MIL (Doc. 78) at 2–6, 12–16. I address each issue in turn.

I. ANALYSIS

### A. Rodriguez's Letter Is Inadmissible under Rule 408

Evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise [a] claim" is inadmissible "on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." FED. R. EVID. 408(a)(1). The same rule generally applies to "conduct or a statement made during compromise negotiations about [a] claim." *Id.* 408(a)(2). But a court "may admit [evidence of compromise offers and negotiations] for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id.* 408(b).

Under Rule 408, Rodriguez seeks to exclude a letter sent by her counsel to Paul Davis Restoration regarding potential state court litigation before this federal action began.[1] The letter, which included a "notice of claim" under § 558.004, FLA. STAT., "dispute[d]" Paul Davis's claim to "an additional amount of $17,301.67" in payment, asserted a claim against Paul Davis for at least $26,378.04 (based on an estimate attached to the letter), and requested that Paul Davis return certain flooring materials to the property. (Doc. 80-1) at 1–2. The letter concluded by stating that, if Paul Davis were to

---

[1] Paul Davis eventually sued Rodriguez in state court and Rodriguez counterclaimed. *See* (Doc. 44-4) (Rodriguez's state court answer and counterclaim). Paul Davis is a non-party in this federal action.

2

"fail or decline to comply with this demand and/or the applicable requirements of [§ 558.004,] Mr. and Mrs. Rodriguez [would] seek to hold [Paul Davis and its President] responsible pursuant to appropriate legal action." *Id.* at 2.

The Florida Legislature requires notice of claim procedures "in certain construction defect matters" as part of an "effective alternative dispute resolution mechanism." § 558.001, FLA. STAT. Under the statutory scheme, a claimant must serve a notice of claim on the prospective defendant "at least 60 days before filing any action." *Id.* § 558.004(1)(a). The notice "must describe in reasonable detail the nature of each alleged construction defect and, if known, the damage or loss resulting from the defect." *Id.* § 558.03(1)(b). The notice must also, "[b]ased upon at least a visual inspection by the claimant or its agents, . . . identify the location of each alleged construction defect sufficiently to enable the responding parties to locate the alleged defect without undue burden." *Id.* After a notice is served, the recipient "must serve a written response to the claimant" within a specified time, *id.* § 558.04(5), which may, but need not, include "[a] written offer to compromise and settle the claim," *id.* § 558.04(5)(a)–(e).

The "chapter 558 framework" described above constitutes "a voluntary dispute resolution mechanism on the part of the insured." *Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 232 So. 3d 273, 278 (Fla. 2017). Put differently, "chapter 558

3

sets forth a presuit process whereby the claim may be resolved solely by the parties through a negotiated settlement or voluntary repairs without ever filing a lawsuit." *Id.*

Rodriguez argues that Rule 408 renders her letter inadmissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Rodriguez MIL at 6. In the alternative, she contends that the letter is inadmissible under Rule 403 as cumulative and because any "probative value is substantially outweighed" by the danger of unfair prejudice and jury confusion. *Id.* at 9–11.[2] Clear Blue responds that Rule 408 does not apply to § 558.004 notices and that even if it did, the letter is relevant and admissible for other purposes. Resp. to Rodriguez MIL (Doc. 80).

Rule 408's prohibition governs here. The letter is "a statement made during compromise negotiations about [a disputed] claim" and thus implicates Rule 408. FED. R. EVID. 408(a)(2). Whether Rodriguez's "demand" language is best understood as a settlement offer or not, the letter and accompanying notice of claim, created in the context of a live dispute and in the shadow of potential state court litigation, was the beginning of "a voluntary dispute resolution mechanism on the part of the insured." *Altman Contractors*, 232 So. 3d at 278. That is enough for Rule 408 to apply. *Cf. Molinos Valle Del Cibao, C.*

---

[2] Rodriguez also briefly asserts that a Sierra Construction estimate referenced in and attached to the letter contains inadmissible hearsay and undisclosed expert evidence. Rodriguez MIL at 11–12. The parties have already agreed that Paul J. Sierra will not testify at trial (Doc. 82) at 2. But the Sierra Construction estimate is relevant to damages and is not hearsay as an opposing party statement. FED. R. EVID. 801(d)(2)(B)–(D). Additionally, Rodriguez's expert Dennis James listed the Sierra Construction estimate in his expert disclosure as one of the documents he considered in formulating his opinion. (Doc. 80-2) at 1. Thus, Clear Blue may question James about the estimate with respect to his opinion.

*por A v. Lama*, 633 F.3d 1330, 1354 (11th Cir. 2011); *Blu-K, Inc. v. Kemper C.P.A. Grp.*, 916 F.2d 637, 642 (11th Cir. 1990) (explaining that the "test for whether statements fall under [an earlier but similar version of Rule 408] is whether the statements or conduct were intended to be part of the negotiations toward compromise" (quotations omitted)).

That Rodriguez sent the letter to Paul Davis and not Clear Blue makes no difference. As the Eleventh Circuit explained in *Dallis v. Aetna Life Insurance Company*, Rule 408 "has been held applicable to situations involving settlements between one of the parties and a third party, where such settlements have arisen out of the same transaction that is in dispute." 768 F.2d 1303, 1306 (11th Cir. 1985); *Armstrong v. HRB Royalty, Inc.*, 392 F. Supp. 2d 1302, 1306–09 (S.D. Ala. 2005) (discussing the "same transaction test"); *see also Stepanovich v. Bradshaw*, No. 24-cv-270, 2017 WL 10084903, at *3 (M.D. Fla. Feb. 3, 2017) (applying *Dallis*); *Aaron v. Trump Org.*, No. 9-cv-2493, 2011 WL 13141669, at *2 (M.D. Fla. Mar. 18, 2011) (similar). Rodriguez's letter arose out of the water damage to her property and Paul Davis's subsequent failed repairs, which is "the same transaction that is in dispute" in Rodriguez's suit against Clear Blue. *Dallis*, 768 F.2d at 1306. And though the Eleventh Circuit appears disinclined to extend the same transaction rule to settlements "between one of the parties and a third party *when such settlement involves similar circumstances to, but does not arise out of, the transaction with which the*

*litigation is concerned*," no such extension is required here. *Id.* at 1307 & n.2 (emphasis added).

Although Rule 408 prohibits use of the letter to undermine the validity of Rodriguez's claim, Clear Blue may use it for another permissible purpose, if it can identify one. As of now though, Clear Blue has failed to do so. Instead, Clear Blue's theory of relevance is that the letter "tends to undermine [Rodriguez's] claims in this case that Clear Blue hired [Paul Davis], and that Clear Blue controlled the scope of work/repairs to be competed by [Paul Davis]." Resp. to Rodriguez MIL at 4. That theory cuts to the heart of whether Rodriguez's claim against Clear Blue for breach of a derivative contract to repair is valid, which is an impermissible purpose under Rule 408. *See* FED. R. EVID. 408(a). Nor may Clear Blue use the letter to impeach the Rodriguezes, who are listed as fact witnesses (or anyone else), by a prior inconsistent statement or contradiction. (Doc. 83) at 7–8.

### B. Dennis James's Supplemental Affidavit is Inadmissible

Next, Clear Blue moves to exclude as untimely and irrelevant a supplemental affidavit by Rodriguez's damages expert, Dennis James, discussing the replacement value of Rodriguez's home. Clear Blue MIL at 2–6. Rodriguez agrees "that all testimony, from either party, regarding the valuation of [the] property is irrelevant to the remaining dispute in this case and should not be permitted to come into evidence." Resp. to Clear Blue MIL (Doc. 81) at 2. I agree with the parties that neither James's supplemental affidavit nor any

6

other evidence of the overall value of Rodriguez's property at the time of the loss is relevant to trial. The court's order resolving the cross-motions for summary judgment took any affirmative defense based on valuation and the policy's underinsurance clause off the table. *See* MSJ Order (Doc. 65) at 21 ("Clear Blue has waived any affirmative defense based on its inability to exercise an option to repair under the insurance policy."); *see also* (Doc. 79) (denying Clear Blue's motion for reconsideration). In the light of that order, James's supplemental affidavit and any similar evidence is irrelevant.

Given the exclusion of James's supplemental affidavit and the inability of either party to identify other potentially undisclosed evidence, there is no need to issue a broader ruling. Of course, the parties may raise any additional timeliness objections that present themselves at trial.

### C. The Remaining Factual Issues in this Action Involve Conduct

Lastly, Clear Blue moves for an order ruling that Rodriguez "may not . . . introduce into evidence, or reference through any testimony, Policy Number AL01-142218-00, and/or any terms of the Policy." Clear Blue MIL at 16. The rationale appears to be that, under the doctrine of completeness and the best-evidence rule, Rodriguez cannot introduce evidence of portions of the policy to argue for the existence of an option to repair unless the court permits Clear Blue to relitigate its argument that there was no option to repair.

7

The summary judgment and reconsideration orders resolve this issue. No party ever contended that the policy precluded "an option to repair in the abstract," and Clear Blue has waived any argument that such option was inapplicable based on the underinsurance clause and the value of Rodriguez's property at the time of the loss. MSJ Order at 10, 21; *see also* (Doc. 79) at 7–8. Additionally, if Clear Blue's arguments about the relationship between the underinsurance clause, valuation, and Rodriguez's claim for breach of a derivative repair contract were correct, it would mean only that valuation and underinsurance were always irrelevant, waiver or otherwise. *See* (Doc. 79) at 9 (explaining that if "an insurer's conduct could create a [derivative contract to repair] despite the failure to satisfy a condition like the underinsurance clause," "whether Rodriguez's property was underinsured [would be] irrelevant").

The factual questions that precluded summary judgment for either party on Count I and remain to be determined at trial relate to conduct—Clear Blue's, Rodriguez's, and Paul Davis's. That conduct is relevant to the jury's ultimate inquiry: whether Clear Blue "elected [an] option to repair, selected the repair company, and directed the insureds to use the services of the repair company the insurer selected." *Drew v. Mobile USA Ins. Co.*, 920 So. 2d 832, 836 (Fla. 4th DCA 2006); *see also Iwanicki v. SafePoint Ins. Co.*, 326 So. 3d 157, 160 (Fla. 2d DCA 2021) (explaining that facts "establishing that [an insurer] unilaterally chose and dispatched a restoration company which then dealt solely with [the

insurer] regarding estimates, invoices, and payment" supported a verdict for the insured on claim for breach of a derivative repair contract despite the failure to comply with the controlling policy's written notice requirement). These questions do not include Clear Blue's argument that it could not exercise an option to repair as a matter of law, which has already been rejected. Put simply, the jury will have no occasion to decide that issue and any introduction of evidence solely in support of that argument would be irrelevant or, at a minimum, highly confusing.

To be sure, the existence of a written insurance contract between Rodriguez and Clear Blue is relevant and likely important to help the jury understand the dispute. The parties may address this issue without relitigating their summary judgment arguments by agreeing to (1) read a set of stipulated facts about the policy to the jury, or (2) admit the entire policy, none of the policy, or agreed-upon redactions of the policy into evidence. The parties should also confer regarding instructions to focus the jury's inquiry on the relevant factual questions and conduct. Given this guidance, a blanket order excluding any evidence of the policy is not required.

Accordingly, the following is **ORDERED:**

1. Rodriguez's motion to exclude evidence of the November 3 letter to Paul Davis under Rule 408 (Doc. 76) is **GRANTED-IN-PART**.

      i. Clear Blue may not introduce the letter "to prove or disprove the validity or amount of a disputed claim [including to show whether Rodriguez hired Paul Davis] or to impeach by a prior inconsistent statement or a contradiction."

      ii. Paul Davis may question James about his consideration of the attached Sierra Construction estimate in forming his expert opinion.

2. Rodriguez's motion to exclude the testimony of Paul J. Sierra and Mark McComeskey (Doc. 77) and Clear Blue's motion to exclude testimony from the corporate representatives of Vogue Remodels and Bast Hardwood Floors (Doc. 78, Section II) are **MOOT** in the light of the parties' agreement that all four will be excluded as witnesses. *See* (Doc. 82).

3. The remainder of Clear Blue's motion *in limine* (Doc. 78) is **GRANTED-IN-PART**.

      i. James's supplemental affidavit discussing the valuation of Rodriguez's property is excluded as irrelevant.

      ii. The parties should confer regarding the potential for agreed-upon stipulations, redactions, and jury instructions with respect to the insurance policy. Any conferral should focus on centering the jury's attention on the key factual issue: whether Clear Blue's conduct created a derivative contract to repair Rodriguez's property under Florida law.

**ORDERED** in Tampa, Florida, on August 19, 2024.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge